

1  JOHN A. RUSSO, City Attorney, SBN 129729
   RANDOLPH W. HALL, Assistant City Attorney., SBN 080142
2  WILLIAM E. SIMMONS, Super. Trial Attorney, SBN 121266
   STEPHEN Q. ROWELL, Deputy City Attorney., SBN 098228
3  One Frank Ogawa Plaza, 6th Floor
   Oakland, California 94612
4  Telephone:  (510) 238-3865       Fax:  (510) 238-6500
   sqrowell@oaklandcityattorney.org
5  X03060/416276

6  Attorneys for Defendants          E-filing

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9  CALIFORNIA FOUNDATION FOR            Case No.   C07-04608 WHA
   INDEPENDENT LIVING CENTERS;
10 CALIFORNIANS FOR DISABILTITY
   RIGHTS, INC;  and MARIAN GRAY, as a   DEFENDANTS PETITION FOR
11 Taxpayer,                            REMOVAL TO FEDERAL COURT ADR

12              Plaintiffs,

13       v.

14 CITY OF OAKLAND; OFFICE OF
   EMERGENCY SERVICES of the Oakland
15 Fire Department; DEPARTMENT OF
   HUMAN SERVICES of the City of Oakland;
16 OFFICE OF PARKS AND RECREATION of
   the City of Oakland; RENEE DOMINGO,
17 in her official capacity of Director of the
   Office of Emergency Services; ANDREA
18 YOUNGDAHL, in her official capacity as
   Director of the Department of Human
19 Services; AUDREE JONES-TAYLOR, in her
   official capacity as Director of the Office of
20 Parks and Recreation; and DEBORAH
   EDGARLY, in here official capacity as City
21 Administrator of the City of Oakland;

22              Defendants.

23

24

25       Petitioners, Defendants CITY OF OAKLAND; OFFICE OF EMERGENCY

26 SERVICES of the Oakland Fire Department; DEPARTMENT OF HUMAN SERVICES of

DEFENDANTS PETITION FOR
REMOVAL TO FEDERAL COURT

the City of Oakland; OFFICE OF PARKS AND RECREATION of the City of Oakland; RENEE DOMINGO, in her official capacity of Director of Emergency Services; ANDREA YOUNGDAHL, in her official capacity as Director of the Department of Human Services; AUDREE JONES-TAYLOR, in her capacity as Director of the Office of Parks and Recreation; and DEBORAH EDGERLY, erroneously named herein as "DEBORAH EDGARLY" in here official capacity as City  Administrator of the City of Oakland state as follows :

1.          Defendants desire to exercise their rights under the provisions of Title 28 U.S.C. §1441, et seq. to remove this action from the Superior Court of the State of California, County of Alameda, Unlimited Jurisdiction, where this action is now pending as <u>California Foundation For Independent Living Centers, et al, v. City of Oakland</u> ,et al., Superior Court No. RG-07339865.

2.          This is an action of a civil nature in which the District Courts of the United States have been given original jurisdiction in that it arises, in part, under the laws of the United States, as provided in 28 U.S.C. §1331 and, further, in that it arises an out of Act of Congress commonly known as 29 U.S.C. §794.

3.          The date on or before which this defendant is required by the California Code of Civil Procedure and the Rules of Alameda County Superior Court to answer or otherwise plead to Plaintiff's Complaint has not lapsed.   Plaintiffs' complaint was served on Defendants on August 9, 2007.  This Petition for Removal is filed in accordance with the requirements of 28 U.S.C. §1446.

4.      Pursuant to the provisions of 28 U.S.C. §1446, Defendants attach herewith and incorporate herein by reference, copies of the following documents served upon the parties in this action:

      (a) Summons and Complaint for Damages.

      (b) Defendant's Answer to the Complaint for Damages.

5.      As declared above, Defendants desire and are entitled to have this action removed from the Superior Court of the State of California for the County of Alameda, Unlimited Jurisdiction, to the United States District Court for the Northern District of California as such district is the district where the suit is pending and conditioned that Defendant will pay all costs and disbursements incurred by reason of these removal proceedings should it be determined that this action was not removable or was improperly removed.

6.      Written notice of the filing of this Petition will be given to all parties to this action as required by law.

7.      A true copy of this petition will be filed with Alameda County Superior Court as provided by law.

8.      Defendants respectfully request that this action be removed to this court and that this court accept jurisdiction of this action.  The aforementioned defendants further request that this action be placed on the docket of this court for further proceedings as if this action had been originally filed in this court.

//

//

1  Dated:  September 6, 2007

2  JOHN A. RUSSO, City Attorney
3  RANDOLPH W. HALL, Assistant City Attorney
   WILLIAM E. SIMMONS, Supervising Trial Attorney
4  STEPHEN Q. ROWELL, Deputy City Attorney

5

6  By: _____

7  Attorneys for Defendants CITY OF OAKLAND and
   OAKLAND POLICE DEPARTMENT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT A**

CITY OF OAKLAND; OFFI` `OF EMERGENCY SERVICES of ` `e Oakland Fire
Department; DEPARTMEN` OF HUMAN SERVICES of the C` y of Oakland;
OFFICE OF PARKS AND RECREATION of the City of Oakland; RENEE A.
DOMINGO in her official capacity as Director of the Office of
Emergency Services

**SUM-100**

**SUMMONS**
*(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ANDREA
YOUNGDAHL, in her official capacity as Director
of the Department of Human
Services; AUDREE JONES-TAYLOR,
in her official capacity as Director of the
Office of Parks and Recreation; and DEBORAH
EDGARLY, in her official capacity as City
Administrator of the City of Oakland

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* CALIFORNIA
FOUNDATION FOR INDEPENDENT LIVING CENTERS;
CALIFORNIANS FOR DISABILITY RIGHTS, INC. and
MARIAN GRAY, as a Taxpayer.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

AUG - 9 2007

CLERK OF THE SUPERIOR COURT
By E. BAKER
Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Alameda County Superior Court
1225 Fallon Street, Room 109
Oakland, CA 94612

CASE NUMBER:
*(Número del Caso)* RG07339065

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sid Wolinsky, Disability Rights Advocates
2001 Center St., 4th Floor, Berkeley, CA 94704
510-665-8644

DATE: AUG - 9 2007     PAT S. SWEETEN     Clerk, by, E. BAKER xecutive Officer/Clerk of the Superior Court, Deputy
*(Fecha)*     *(Secretario)*     *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com



1  DISABILITY RIGHTS ADVOCATES
   SID WOLINSKY (CA Bar No. 33716)
2  JENNIFER WEISER BEZOZA (CA Bar No. 247548)
   MARY-LEE KIMBER (CA Bar No. 239086)
3  2001 Center Street, Fourth Floor
   Berkeley, California 94704-1204
4  Telephone:    (510) 665-8644
   Facsimile:    (510) 665-8511
5  TTY:          (510) 665-8716
   Email:        general@dralegal.org
6
   Attorneys for Plaintiffs
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                         COUNTY OF ALAMEDA
9

10  CALIFORNIA FOUNDATION FOR          Case No.: RG 07 33 98 65
    INDEPENDENT LIVING CENTERS;
11  CALIFORNIANS FOR DISABILITY         **Taxpayer's Action**
    RIGHTS, INC.; and MARIAN GRAY, as a
12  Taxpayer,

13                                       **COMPLAINT FOR VIOLATION OF**
                      Plaintiffs,        **CIVIL RIGHTS & DISCRIMINATION**
14                                       **AGAINST PEOPLE WITH**
                                         **DISABILITIES:  CALIFORNIA CIVIL**
    v.                                   **CODE § 54, *et seq.*; CALIFORNIA**
15                                       **GOVERNMENT CODE § 11135, *et seq.*;**
    CITY OF OAKLAND; OFFICE OF           **SECTION 504 OF THE**
16  EMERGENCY SERVICES of the Oakland    **REHABILITATION ACT OF 1973;**
    Fire Department; DEPARTMENT OF       **DECLARATORY RELIEF**
17  HUMAN SERVICES of the City of Oakland;
    OFFICE OF PARKS AND RECREATION of
18  the City of Oakland; RENEE A. DOMINGO,
    in her official capacity as Director of the
19  Office of Emergency Services; ANDREA
    YOUNGDAHL, in her official capacity as
20  Director of the Department of Human
    Services; AUDREE JONES-TAYLOR, in her
21  official capacity as Director of the Office of
    Parks and Recreation; and DEBORAH
22  EDGARLY, in her official capacity as City
    Administrator of the City of Oakland;
23

24                     Defendants.
25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

LD 9/10/07

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Plaintiffs, by their attorneys Disability Rights Advocates, as and for their complaint

2  against Defendants, allege as follows:

3                                                **INTRODUCTION**

4    1.    This case arises out of discrimination by Defendants towards the over 84,000

5  residents of the City of Oakland with disabilities.  The neglect of these disabled residents is the

6  product of Defendants' failure to sufficiently plan to meet the unique needs of people with

7  disabilities during an emergency.  Potential shelter facilities are physically inaccessible and mass

8  care and shelter policies, procedures, and plans for people with disabilities are inadequate or non-

9  existent.

10    2.    Many of the facilities on Oakland's list of potential emergency shelters are

11  inaccessible to people with disabilities.  The problems include inaccessible entrances, paths of

12  travel, bathrooms, showers, signage, and parking.

13    3.    In addition, Oakland does not have a current mass care and shelter plan that

14  addresses the needs of people with disabilities; a database of potential shelters with current and

15  comprehensive accessibility information; an inventory of shelter supplies; or arrangements with

16  community-based organizations, pharmacies, or providers of medical supplies and equipment.

17    4.    Recent catastrophic disasters, such as 9/11 and Hurricanes Katrina and Rita, have

18  made local government officials acutely aware of the critical need to plan to provide mass care

19  and shelter services to large numbers of impacted citizens.  They are also cognizant of the

20  barriers that people with disabilities have faced in past disasters when they tried to access

21  emergency shelter services.  Local officials have acknowledged that Oakland needs to improve

22  its mass care and shelter planning to address the needs of people with disabilities.  Yet, the City

23  of Oakland has been dragging its feet for years, relying on an incomplete plan that is twenty

24  years old.

25    5.    The result of Oakland's failure to adequately plan to meet the shelter needs of

26  people with disabilities is that it cannot assure that when a disaster happens, the City will be able

27  to provide acceptable mass care and shelter services to all residents with disabilities.  Oakland's

28  inability to provide critical emergency services to people with disabilities means that the lives of

this vulnerable population are at extreme risk.

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

6.      Oakland's failure to address the emergency needs of men, women, and children with disabilities is particularly egregious because geographical, environmental and demographic factors make Oakland exceptionally vulnerable to a number of hazards likely to require evacuation to emergency shelters.  Oakland lies within the San Andreas fault system and straddles the Hayward fault, making earthquakes a constant threat.  Oakland is also at risk for uncontrolled fires, flooding, landslides, hazardous waste accidents, and terrorism-related emergencies.

7.      In the last twenty-five years, the City of Oakland has experienced eight Presidential-declared disasters, including the 1989 Loma Prieta earthquake and 1991 Oakland Hills Firestorm.  During many of these disasters, the homes of Oakland residents were destroyed, requiring mass evacuations and the provision of emergency shelter services

8.      When natural or man-made disasters occur, disabled men women, and children are among the people most likely to suffer because they cannot access critical information, transportation, or evacuation services.  They are also more likely to use emergency shelters because they are disproportionately low income and do not have other options.

9.      Because of Defendants' knowing failure to adequately survey potential shelter sites and revise its mass care and shelter policies and procedures to address the needs of people with disabilities, Plaintiffs have been denied equal access to Oakland's shelter facilities, programs, and services, in violation of California Civil Code § 54, *et seq.*, California Government Code § 11135, *et seq.*, and Section 504 of the Rehabilitation Act of 1973.  Plaintiffs seek injunctive and declaratory relief as to these ongoing violations of state and federal civil rights laws.

## JURISDICTION

10.     This Court has jurisdiction to grant injunctive relied on behalf of Plaintiffs pursuant to California Code of Civil Procedure §§ 525 and 526.

11.     This Court has jurisdiction to grant declaratory relief on behalf of Plaintiffs pursuant to California Code of Civil Procedure § 1060.

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**VENUE**

12.    Venue is proper in Alameda County under California Code of Civil Procedure § 395(a) because liability arises in Alameda County. Defendants have been and are committing the acts alleged herein in Alameda County, have been and are violating the rights of people with disabilities in Alameda County, and have been and are causing injury to people with disabilities in Alameda County.

**PARTIES**

13.    Organizational Plaintiff California Foundation for Independent Living Centers ("CFILC") is a statewide, non-profit organization made up of twenty-five Independent Living Centers ("ILCs"), which are community-based organizations that provide services and advocacy by and for people with all types of disabilities. Founded in 1976, CFILC provides information, training, and peer support that enables ILCs to improve their effectiveness in their local communities. At the state and federal level, CFILC works to coordinate efforts for positive public policy changes that benefit people with disabilities.

14.    CFILC has been a leader in advocating for the rights of people with disabilities in emergency preparedness. It has organized conferences, produced publications, participated in statewide partnerships, and engaged in legislative advocacy to improve emergency preparedness for people with disabilities. Earlier this month, CFILC launched a coalition called the "Access 2 Readiness Coalition" to keep the disability community informed about emergency preparedness issues. CFILC has actively participated in statewide disaster planning so that it can help prepare emergency response and shelter organizations to deal successfully with disability-related needs in a disaster. CFILC also provides guidance to the individual ILCs in their efforts to prepare their constituents for an emergency. CFILC's programmatic interests, activities, and expenditures on emergency preparedness are directly and adversely affected by Oakland's failure to appropriately plan to meet the emergency shelter needs of people with disabilities.

15.    Organizational Plaintiff Californians for Disability Rights ("CDR") is the oldest and largest membership organization of people with disabilities in California. It currently has over 600 members. CDR's objectives are to improve the quality of life for all persons with disabilities through education and training and to work to remove access barriers through

*CFILC, et al., v. City of Oakland, et al.*
COMPLAINT

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    advocacy and changes in public policy. A major focus of CDR for the past twenty-five years has

2    been improving access to governmental programs and services for people with disabilities and

3    ensuring that local agencies and state entities obey the laws protecting people with disabilities.

4    Many of CDR's members are active on emergency preparedness issues within their

5    communities. Accordingly, the interests that CDR seeks to protect through this litigation are

6    germane to its mission and purpose. Further, CDR's members include people with disabilities

7    who reside in Oakland and have been harmed and continue to experience harm because of

8    Defendants' failure to appropriately plan to meet the emergency shelter needs of people with

9    disabilities.

10    16.    Plaintiff MARIAN GRAY is a citizen of the United States and of the state of

11    California, and has paid taxes to the City of Oakland and the State of California within one year

12    of the commencement of this action. Ms. Gray is a sixty-one year old polio survivor who uses a

13    power wheelchair full-time and a ventilator at night. She is a qualified person with a disability

14    within the meaning of all applicable nondiscrimination law. Ms. Gray is concerned that the City

15    of Oakland is expending public funds for emergency preparedness in a manner that discriminates

16    against people with disabilities. In particular, she is concerned that Oakland is not sufficiently

17    prepared to meet the emergency shelter needs of people with disabilities. Ms. Gray is especially

18    worried that Oakland will be unable to meet her specific emergency needs because it cannot

19    ensure: (1) that there will be a fully accessible shelter that she can go to that will have sufficient

20    electrical power for her to charge her wheelchair and use her ventilator, and (2) that assistance in

21    securing her daily and emergency medications will be provided.

22    17.    Defendant CITY OF OAKLAND is placed by California's State Emergency Plan

23    and Standardized Emergency Management System ("SEMS")[1] at the first level of response for

24    meeting the disaster needs of people in its jurisdiction. It is responsible for the protection of life,

25    property, and the environment during a declared emergency. In particular, the City of Oakland is

26

27

---

28    [1] SEMS is a system required by California Government Code § 8607 for managing the response to multi-agency and multi-jurisdictional emergencies in California. It helps unify all elements of California's emergency management organization into a single integrated system. Local government agencies must use SEMS to be eligible for State funding of certain response-related costs resulting from a disaster.
*CFILC, et al., v. City of Oakland, et al.*
COMPLAINT

1   responsible for preparing for and providing emergency care and shelter to *all* people made

2   homeless by a natural disaster or other emergency.

3       18.    Defendant OFFICE OF EMERGENCY SERVICES ("OES") is a division of the

4   Oakland Fire Department and is responsible for emergency preparedness, planning, education,

5   and training to ensure a comprehensive, coordinated response by the City to both natural and

6   human-caused disasters.  OES shares responsibility for Oakland's Mass Care and Shelter Plan

7   with the Department of Human Services and the Office of Parks and Recreation.

8

9       19.    Defendant DEPARTMENT OF HUMAN SERVICES ("DHS") of the City of

10   Oakland is responsible for supporting the City's mass care and shelter effort in concert with the

11   Office of Parks and Recreation, the American Red Cross, and Oakland Unified School District,

12   through the Oakland Office of Emergency Services and the City's SEMS protocol.  It is

13   specifically charged with assessing the availability of City operated shelters and emergency

14   supplies.  DHS shares responsibility for Oakland's Mass Care and Shelter Plan with the Oakland

15   Office of Emergency Services and the Office of Parks and Recreation.

16       20.    Defendant OFFICE OF PARKS AND RECREATION ("OPR") of the City of

17   Oakland is responsible for coordinating the opening and operations of local shelters during an

18   emergency with the American Red Cross, the Department of Human Services, and Oakland

19   Unified School District.  It is also responsible for coordinating the opening of Disaster

20   Application Centers with the Oakland Office of Emergency Services and the State Office of

21   Emergency Services.  OPR shares responsibility for Oakland's Mass Care and Shelter Plan with

22   the Oakland Office of Emergency Services and the Department of Human Services.

23       21.    Defendant RENEE A. DOMINGO is the Director of the Oakland Office of

24   Emergency Services.  She is sued in her official capacity.

25       22.    Defendant ANDREA YOUNGDAHL is the Director of the Department of Human

26   Services of the City of Oakland.  She is sued in her official capacity.

27       23.    Defendant AUDREE JONES-TAYLOR is the Director of the Office of Parks and

28   Recreation of the City of Oakland.  She is sued in her official capacity.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA, 94704-1204
(510) 665-8644

*CFILC, et al., v. City of Oakland, et al.*
COMPLAINT

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

24.     Defendant DEBORAH EDGERLY is the Oakland City Administrator and, as such, is the City's chief administrative officer. As City Administrator, Ms. Edgerly has the power and duty to execute and enforce all laws, ordinances, and policies of the City Council and to administer the affairs of the City. She is sued in her official capacity.

## FACTS

**A.     The City of Oakland Is Exceptionally Vulnerable to Emergencies**

25.     Due to location, geography and history, Oakland is susceptible to the following emergency conditions:

   a.     Earthquakes on at least three known active faults;

   b.     Urban firestorms in the hill areas;

   c.     Multi-alarm fires from old building stock;

   d.     Severe weather conditions resulting in flooding, landslides, tree damage and power outages;

   e.     Hazardous material spills or toxic releases caused by transportation and/or industrial accidents;

   f.     Civil disturbance; and

   g.     Terrorist incidents.

26.     Since 1983, the City of Oakland has experienced eight Presidential-declared disasters, including the 1989 Loma Prieta earthquake, 1991 Oakland Hills Firestorm, the 1997 El Nino winter storms, and the 1998 La Nina winter storms. During many of these disasters, the homes of Oakland residents were destroyed, requiring mass evacuations and the provision of emergency shelter services. For instance, following the Loma Prieta earthquake, more than 12,000 Oakland residents were left homeless and more than 18,000 homes were damaged. Following the 1991 Oakland Hills Firestorm, more than 3,000 homes were destroyed.

27.     Oakland has been shaken by moderate-to-major earthquakes approximately sixty times in the recorded history of the area. United States Geological Survey ("USGS") scientists have concluded that there is a 62% probability of one or more major earthquakes (magnitude 6.7 or greater) striking the Bay Area between the years 2003 and 2032.

28.     The Hayward fault has the highest probability of producing a major quake. In fact, the Hayward fault is considered "one of the most hazardous in the world" because of its

*CFILC, et al., v. City of Oakland, et al.*
COMPLAINT

1   high "slip rate;" its demonstrated ability to generate large, surface-rupturing earthquakes; and its

2   location through a heavily urbanized area.

3          29.    The Association of Bay Area Governments ("ABAG"), in a 1996 report entitled

4   "Shaken Awake," predicted that, if there were an earthquake on the Hayward fault line in the

5   next thirty years, the shelter population in Oakland would be a minimum of 17,500 people and

6   could be as large as 42,000 people.

7          30.    As one of the oldest cities in the state, Oakland's densely populated jurisdiction

8   (7,126 persons per square mile in comparison to 217 persons per square mile in California)

9   includes old building stock (much of which is un-reinforced masonry) and an aging

10  infrastructure.  Un-reinforced masonry ("URM") buildings are the structures most likely to

11  collapse from strong ground shaking or to require demolition afterward.  There are

12  approximately 870 buildings on Oakland's list of potentially hazardous URM buildings.

13         31.    It is estimated that, following an earthquake, up to 92% of the URM buildings in

14  Alameda County will be uninhabitable.  Many of these older buildings provide low income

15  housing.  Because of the rapid rise in housing costs in recent years, there are fewer alternatives to

16  these buildings when they become uninhabitable due to a disaster.  The result is that emergency

17  shelters will need to be kept open for a longer period of time.  This is precisely what happened

18  following the Loma Prieta earthquake, which destroyed 1300 units of Oakland's low income

19  housing stock.

20         32.    Oakland is also at a higher risk for structural fires than most other jurisdictions in

21  California because of its relatively old and dense development pattern.  In the past, strong

22  earthquakes in the Bay Area have been followed by fires.  The threat of extensive fire damage is

23  greatest following a major earthquake, at which time the severity of fires may be compounded by

24  the accompanying failure of water mains.

25         33.    The Oakland hills are a "fire-dependent ecosystem," meaning that wildfires occur

26  there every year, especially in late summer and early fall when the area's natural vegetation is

27  dry and extremely flammable.  Large fires in the Oakland Hills are anticipated by city officials

28  every ten to twenty years.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

34.     Given that 42.6% of the land in Alameda County is located in "Wildland Urban Interface Wildfire Threat" areas, an uncontrollable wildfire could threaten a staggering amount of housing.  During the first three hours of the 1991 Oakland Hills Firestorm, the fire consumed one house every eleven seconds.  It ultimately resulted in 25 deaths, 150 injuries, and the destruction of more than 3,000 homes, making it the costliest wildfire in United States history.  Due to repair and rebuilding, the number of people and homes currently in harm's way is roughly the same as it was before the 1991 Firestorm.

35.     Oakland also faces other potential hazardous conditions that have forced evacuations and may necessitate emergency shelter services.  Excess rain has and will likely continue to result in flooding, landslides, tree damage, and power outages.  Over twenty significant landslides have occurred in Oakland during the last seven decades.  Most hillside development in Oakland predates the imposition of grading and slope requirements, making homes more susceptible to landslide damage.

36.     As a port city with a great deal of industry, Oakland is also prone to industrial accidents, such as hazardous material spills, which would require mass evacuations.  Finally, as a large city in the Bay Area with a dense population, Oakland is a potential terrorist target.  In July 2007, the United States Department of Homeland Security designated the Bay Area as one of the six urban areas in the country most at risk for terrorist attacks.

**B.      Emergencies Disproportionately Affect Persons with Disabilities**

37.     When a disaster occurs, people with disabilities and the elderly are more likely to suffer its direct impact.  Many people with disabilities are unable to evacuate themselves, see approaching danger, or hear announcements to evacuate, making them especially vulnerable to natural disasters.  Evacuation announcements are often made using loudspeakers on patrol cars and television broadcasts often fail to include captions, leaving the deaf and hard of hearing without critical emergency information.  The lack of accessible transportation makes it extremely difficult for people with disabilities to evacuate and/or travel to emergency shelter.

38.     People with disabilities are disproportionately dependent on electricity because they need to power much of their assistive technology, such as wheelchairs, scooters, and communications software.  In addition, people with certain disabilities are temperature-sensitive

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  and cannot be exposed to extreme temperatures, which may result from power outages. Thus,

2  utility outages alone may require people with disabilities to seek emergency shelter, if available.

3     39.    Past disasters have shown that low-income families are nearly ten times more

4  likely to seek public shelter in a disaster versus more moderate to upper income families. People

5  with more resources generally can find alternatives to public shelters, whereas people who have

6  a low income cannot. In addition, low-income people are more likely to live in multi-family

7  homes, which are more vulnerable to collapse because they are not typically reinforced. Because

8  people with disabilities are disproportionately low-income, they tend to be disproportionately

9  represented among shelter residents.

10     40.    In addition to the people with disabilities who routinely reside in Oakland, there

11  will be untold additional numbers of people with injuries and temporary disabilities who will

12  need access to temporary shelter and support services in an emergency.

13  **C.     Experiences of People With Disabilities in Past Disasters**

14     41.    After the Loma Prieta earthquake in 1989, many of the first aid stations in shelters

15  lacked the capacity to keep certain life-sustaining medications. Food, water, supplies, and

16  disaster relief applications were disseminated in areas of shelters that were inaccessible to

17  wheelchair users.

18     42.    After the 1994 earthquake in Northridge, California, trash and glass were

19  scattered everywhere, making it extremely difficult for wheelchair users and the visually

20  impaired to navigate the streets. Elevators were not functioning and there was very little

21  accessible transportation available, making it nearly impossible for most people with disabilities

22  to get to shelters.

23     43.    Many people with disabilities who were able to get to emergency shelters after the

24  Northridge earthquake were turned away when they arrived. Some people were inappropriately

25  referred to medical facilities when shelter personnel misidentified their disabilities as acute

26  medical conditions. A deaf person was denied services by a shelter because no one understood

27  sign language and individuals with cerebral palsy and multiple sclerosis were denied admission

28  to shelters because they were perceived as being under the influence of drugs or alcohol. Other

people with disabilities learned when they arrived at shelters that guide dogs and service dogs

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  were not allowed, they could not get to the bathrooms because they were located upstairs, or

2  shower stalls were inaccessible.

3      44.    The winter storm flooding in Oakland in 1997 required the evacuation of over

4  150,000 Californians, 1,000 of whom resided in nursing facilities or home health care settings.

5  As shelter populations grew, available medical resources became overwhelmed, placing

6  medically fragile individuals at risk.

7      45.    During the 2003 wildfires in Southern California, many individuals who require

8  mobility aids to walk were evacuated and brought to emergency shelters without those items. As

9  a result, they were restricted to their beds. Volunteers had to carry them to the restrooms, when

10  needed. Evacuation planning did not include vehicles that could also transport wheelchairs and

11  walkers so evacuees with disabilities could maneuver throughout the shelters without assistance.

12      46.    Many of the shelters used in the 2003 wildfires were inaccessible to people with

13  mobility disabilities. Those who use service animals were not initially allowed to bring their

14  animals into the shelters. The deaf were unable to receive critical information in many of the

15  shelters because there were no interpreters available, they couldn't understand the public address

16  systems, and televisions were not captioned. People who rely on specialized medication and did

17  not have prescriptions or a supply with them were placed in danger due to medical conditions.

18  Emergency telephone access was provided through prior arrangements with a vendor that used a

19  trailer that had no telephones located within reach of people using wheelchairs and no

20  telecommunication devices for the deaf.

21      47.    After Hurricane Katrina, community-based organizations that serve people with

22  disabilities complained they were unable to obtain information about where emergency shelters

23  were opening, how to transport consumers there, or what types of disabilities the shelters could

24  accommodate. As a result, many people with disabilities were transported to nursing homes

25  where they could not maintain their independence.

26      48.    Many of the shelters used during Hurricane Katrina were not physically

27  accessible to people with disabilities. Some shelters refused services to people with service

28  animals and obvious disabilities. Almost all shelters were unable to make their programs

accessible to people with disabilities or to meet basic living needs of people with disabilities.

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    For example, essential medical services were offered on upper floors of shelters with no elevator

2    access.  People who had lost their wheelchairs during evacuation had no way to stand in line for

3    shelter services.  In addition, shelters were not equipped with durable medical equipment,

4    medications for people with mental illness, or insulin for diabetics.  Most shelters had no sign-

5    language interpreters and no written announcements, which meant that deaf evacuees were

6    denied access to the information conveyed over loudspeakers.

**D.    The Elements of Comprehensive Mass Care and Shelter Planning for People with Disabilities**

9    49.    The disability community has been reporting problems with emergency services

10    for decades.  In order to prevent the above-described experiences of people with disabilities

11    during disasters, emergency planning must take into account the unique needs of people with

12    disabilities, particularly with respect to mass care and shelter.

13    50.    A mass care and shelter plan must describe the roles and responsibilities of city

14    agencies in the provision of mass care, establish potential shelter locations, and list the tasks

15    necessary to support shelter sites and ensure that services and information will be accessible to

16    people with disabilities.

17    51.    In September 2003, Alameda County Operational Area funded the development

18    of a planning guide for local governments, entitled "A Guide for Local Jurisdictions in Care and

19    Shelter Planning."  The guide details all of the components that are needed for a city to

20    appropriately plan to provide mass care and shelter during a disaster.  The following are among

21    those components:

22    

23    a.    Identify and survey shelter facilities;

24    b.    Designate primary and secondary shelter facilities based on size and

25    accessibility;

26    c.    Develop a plan to provide people with disabilities with information about

27    accessible sheltering options;

28    d.    Develop statements of understanding with all potential shelter facilities;

_CFILC. et al., v. City of Oakland, et al._

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1     e.      Develop a statement of understanding with the American Red Cross;

2     f.      Provide training to city employees who will staff and manage disaster

3   shelters;

4     g.      Develop plans to make accommodations where facilities have barriers that

5   impede full access for people with disabilities;

6     h.      Conduct a pre-occupancy inventory of potential shelter sites to determine

7   what operational supplies may already be in place and develop a plan to obtain needed shelter

8   supplies and equipment;

9

10     i.      Establish vendor agreements with local pharmacies to provide emergency

11   replacement prescriptions and medical equipment for the elderly and people with disabilities

12   (e.g., orthopedic braces, wheelchairs, breathing aids, and colostomy bags);

13     j.      Plan for the storage of medications;

14     k.      Pre-identify shelter sites with back-up generators;

15     l.      Develop a resource list of community mental health providers and

16   services to call upon, if needed;

17

18     m.      Identify local para-transit resources for the transport of wheelchair users;

19     n.      Develop a plan to address the information needs of persons who are deaf,

20   blind, or non-English speaking;

21     o.      Identify and develop relationships with community-based organizations

22   that support vulnerable populations so that they can assist with care and shelter operations; and

23     p.      Provide disaster planning information to licensed care facilities to support

24   their emergency preparedness efforts.

25

26

27

28

*CFILC, et al., v. City of Oakland, et al.*

52.    The City of Oakland's SEMS Emergency Plan,[2] dated August 2002, requires that all potential shelter sites be surveyed and meet all Americans with Disabilities Act ("ADA") access requirements, which include, but are not limited to:

a.    accessible entrances/exits and paths of travel to and within the shelter;

b.    accessible parking close to the shelter;

c.    accessible restrooms and showers (if offered); and

d.    accessible signage (e.g., Braille) for persons with vision disabilities.

When potential shelter facilities are assessed, the City must determine the level of ADA compliance and the need for any modifications.  City employees must be trained in what constitutes accessible facilities so that they can appropriately evaluate potential shelter sites.

53.    Physical access problems are often created by policies and procedures in place at the shelter.  Accordingly, policies and procedures for emergency shelter services must take into account the needs of persons with disabilities.  There must be policies and procedures for, but not limited to, the following:

a.    Providing para-transit or other accessible form of transportation from inaccessible shelters to accessible shelters;

b.    Placing key services, such as the infirmary, in accessible areas;

c.    Ensuring sufficiently wide paths of travel through sleeping areas;

d.    Permitting service animals within emergency shelters; and

e.    Providing information in accessible formats for people with sensory and cognitive disabilities.

54.    City employees who manage and staff shelters must also be trained to be sensitive and responsive to the needs of people with disabilities, from intake to the provision of medications and supplies to the dissemination of information.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

[2]  Oakland's SEMS plan is distinct from its outdated Mass Care and Shelter Plan.

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

E.    **Oakland Has Not Adequately Planned to Meet the Mass Care and Shelter Needs of People with Disabilities**

55.    Oakland is not prepared to meet the unique needs of people with disabilities during an emergency;  potential shelter facilities are physically inaccessible and policies, procedures, and plans for people with disabilities are inadequate or non-existent.

56.    While Oakland has identified a number of potential shelter facilities (i.e., churches, schools, and park recreation centers), the City's shelter list does not have current contact information for those facilities.  More importantly, the City lacks comprehensive information about the accessibility of potential sites.  Without this information, Oakland is unable to provide people with disabilities with information about accessible sheltering options.  Nor can it ensure that it will be able to provide equal access to its shelter services to people with disabilities.

57.    The result of Oakland's failure to maintain current and comprehensive information about potential shelter sites is that Oakland has designated shelter facilities that are not physically accessible.  For example, some of the facilities on the list have multiple levels with no elevators, no Braille signage, doorways that are too narrow, or restrooms and/or showers that are completely inaccessible to wheelchair users.

58.    Oakland has also failed to revise its Mass Care and Shelter Plan from the 1980s to address the needs of people with disabilities.  As a result, the City lacks many, if not all, of the planning elements described above.  For example, Oakland has:

a.    No plan for modifying shelters that do not meet ADA requirements so that people with disabilities will have full access to all services being provided at the shelter facility;

b.    No memoranda of understanding between the City and potential shelter sites;

c.    No inventory of shelter supplies;

d.    No arrangements to provide replacement prescriptions or medical equipment;

*CEILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

e.     No arrangements for the transportation of people with disabilities from inaccessible shelters to accessible shelters;

f.     No plan to meet the information needs of people who are deaf, blind, or non-English speaking;

g.     No arrangements with community-based organizations that service special needs populations;

h.     No plan to meet the needs of people who choose to home-shelter on their property;

i.     No plans to assist the County in serving people with disabilities who are placed in the medically fragile shelter; and

j.     No list of residential care facilities that have viable plans for continued care and evacuation of clients in an emergency.

59.     The City is aware that it needs to revise and update its Mass Care and Shelter Plan. In a comprehensive review of the City's emergency response capabilities in November 2005, directed by the Oakland City Council, the City found that it needs to improve its emergency planning to more fully address special needs populations. The Office of Emergency Services indicated that it plans to address the needs of people with disabilities in its next revision of the City's Mass Care and Shelter Plan.

60.     In November 2006, an engineering design firm submitted a proposal for the preparation of a care and shelter plan for the City of Oakland that would address, among other things, the needs of people with disabilities. Almost one year later, Oakland has yet to contract with that firm or any other company for assistance with the development of its care and shelter plan. Nor has it developed or begun implementing such a plan on its own. Without a current mass care and shelter plan, Oakland cannot provide any assurance that, if a natural disaster happened tomorrow, it is prepared to meet the unique shelter needs of people with disabilities.

1    61.    Oakland cannot depend on the American Red Cross to relieve it of its planning

2   responsibilities.  The City must be prepared to provide mass care and shelter services prior to the

3   arrival of support from the American Red Cross, which may take as long as five days.  If and

4   when the American Red Cross takes over management of emergency shelters in Oakland, the

5   City is still responsible for meeting the needs of people with disabilities.

### FIRST CAUSE OF ACTION
### (Violation of California Civil Code § 54, *et seq.*)

62.    Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through

61, inclusive.

63.    The emergency shelter facilities under the control of Defendants constitute places

of public accommodation and/or places to which the general public is invited within the meaning

of California Civil Code §§ 54.1 and 54.3.

64.    Defendants have and are violating Plaintiffs' rights under California Civil Code §

54, *et seq.*, by denying Plaintiffs full and equal access to and use and enjoyment of emergency

shelter facilities and services due to the acts and omissions alleged herein.

65.    Defendants' discriminatory conduct alleged herein includes, *inter alia*, the

violation of the rights of persons with disabilities set forth in Title II of the ADA and

accompanying regulations, all of which have been expressly incorporated into California Civil

Code § 54, *et seq.*, since January 1, 1993.

66.    Defendants' actions constitute a violation of Plaintiffs' rights under California

Civil Code § 54, *et seq.*, and therefore Plaintiffs are entitled to injunctive relief remedying the

discrimination.

67.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SECOND CAUSE OF ACTION
### (Violation of California Government Code § 11135, *et seq.*)

68.    Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1

through 67, inclusive.

*DISABILITY RIGHTS ADVOCATES*
*2001 CENTER STREET, FOURTH FLOOR*
*BERKELEY, CALIFORNIA 94704-1204*
*(510) 665-8644*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

69.    California Government Code § 11135 and the regulations promulgated thereunder prohibit discrimination against people with disabilities by any program or activity funded by the State.  Section 11135 provides, in pertinent part, that:

> No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the State.

70.    Defendants receive financial assistance from the State of California to provide mass care and shelter services during an emergency.

71.    Through their actions and inactions, by refusing to provide Plaintiffs full and equal access to their emergency mass care and shelter services, Defendants have denied Plaintiffs the benefits of, or unlawfully subjected them to discrimination, in such programs and activities solely because of their disabilities in violation of Government Code § 11135 and the regulations promulgated thereunder.

72.    As a proximate result of Defendants' violations of § 11135, Plaintiffs have been injured as set forth herein.

73.    Plaintiffs have no adequate remedy at law.  Unless the relief requested herein is granted, Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied full access to Defendants' facilities, programs, services, and activities on the basis of disability.  Consequently, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION
### (Violation of Section 504 of the Rehabilitation Act of 1973)

74.    Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through 73, inclusive.

75.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the implementing regulations, prohibit discrimination against people with disabilities by recipients of federal funding.  Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

1  participation in, be denied the benefits of, or be subjected to
2  discrimination under any program or activity receiving Federal financial assistance . . . .

3    76.    Plaintiff MARIAN GRAY is a qualified individual with a disability within the

4  meaning of Section 504.

5    77.    Defendants receive federal financial assistance to provide mass care and shelter

6  services during an emergency.

7    78.    By failing to plan to meet the mass care and shelter needs of people with

8  disabilities, Defendants have excluded them from participation in, denied them the benefits of,

9  and discriminated against them in programs and activities that receive federal financial

10  assistance, solely by reason of their disabilities, in violation of 29 U.S.C. § 794 and the

11  implementing regulations.

12    79.    As a proximate result of Defendants' violations of Section 504 of the

13  Rehabilitation Act, Plaintiffs have been injured as set forth herein.

14    80.    Plaintiffs have no adequate remedy at law and unless the relief requested herein is

15  granted, Plaintiffs will suffer irreparable harm in that they will continue to be discriminated

16  against and denied access to Defendants' mass care and shelter program. Consequently,

17  Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

18    WHEREFORE, Plaintiffs pray for relief as set forth below.

19    **FOURTH CAUSE OF ACTION**
   **(Declaratory Relief)**

20

21    81.    Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through

22  80, inclusive.

23    82.    Defendants deny failing to comply with applicable laws prohibiting

   discrimination against persons with disabilities in violation of California Civil Code § 54, *et seq.*,

24  California Government Code § 11135, *et seq.*, and Section 504 of the Rehabilitation Act.

25    83.    A judicial declaration is necessary and appropriate at this time in order that each

26  of the parties may know their respective rights and duties and act accordingly.

27    WHEREFORE, Plaintiffs pray for relief as set forth below.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CFILC, et al., v. City of Oakland, et al.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## FIFTH CAUSE OF ACTION
### (Taxpayer's Action for Injunctive Relief, California Code of Civil Procedure § 526a)

84.    Plaintiffs incorporate, by reference herein, the allegations in paragraphs 1 through 83, inclusive.

85.    Plaintiff MARIAN GRAY is a citizen resident of the United States and of the State of California who has paid taxes to the City of Oakland and the State of California within one year of the commencement of this action.

86.    Defendants, by illegally discriminating against Plaintiffs as alleged herein, have expended and wasted tax moneys of the City of Oakland and the State of California. Defendants will continue to expend and waste tax moneys in an illegal manner as alleged herein in violation of state and federal law to the irreparable injury of Plaintiffs, requiring a multiplicity of suits, unless restrained by the issuance of an injunction pursuant to C.C.P. § 526a.

87.    Plaintiffs have no other plain, speedy and adequate remedy in the ordinary course of the law to compel Defendants to comply with the legal requirements described herein.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    A declaration that Defendants' failure to adequately plan to meet the emergency mass care and shelter needs of people with disabilities violates California Civil Code § 54, *et seq.*, California Government Code § 11135, *et seq.*, and Section 504 of the Rehabilitation Act.

2.    An order and judgment enjoining Defendants from violating California Civil Code § 54, *et seq.*, California Government Code § 11135, *et seq.*, and Section 504 of the Rehabilitation Act, and requiring Defendants to comprehensively survey the accessibility of all potential shelter sites and develop and implement a mass care and shelter plan that addresses the emergency needs of people with disabilities.

1       3.     An order enjoining Defendants from expending tax moneys for disaster

2 planning in a way that illegally discriminates against people with disabilities by not taking into

3 account their mass care and shelter needs.

4       4.     Plaintiffs' reasonable attorneys' fees and costs.

5       5.     Such other and further relief as the Court deems just and proper.

6

7 RESPECTFULLY SUBMITTED,

8

DATED:  August 9, 2007            DISABILITY RIGHTS ADVOCATES

9

10

11

12                        By:

13                            JENNIFER WEISER BEZOZA

Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*CFILC, et al., v. City of Oakland, et al.*

**EXHIBIT B**



1  JOHN A. RUSSO, City Attorney, SBN 129729
   RANDOLPH W. HALL, Assistant City Atty., SBN 080142
2  WILLIAM E. SIMMONS, Super. Trial Atty, SBN 121266
   STEPHEN Q. ROWELL, Deputy City Atty., SBN 098228
3  One Frank Ogawa Plaza, 6th Floor
   Oakland, California 94612
4  Telephone:  (510) 238-3865      Fax:  (510) 238-6500
   sqrowell@oaklandcityattorney.org
5  X03060/415693

6  Attorneys for Defendants

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF ALAMEDA

10

11  CALIFORNIA FOUNDATION FOR            Case No. RG07339865
    INDEPENDENT LIVING CENTERS;
12  CALIFORNIAS FOR DISABILTIY           **DEFENDANTS' ANSWER TO THE**
    RIGHTS, INC;  and MARIAN GRAY, as a  **COMPLAINT**
13  Taxpayer,

14              Plaintiffs,                           **"BY FAX"**

15        v.

16  CITY OF OAKLAND; OFFICE OF
    EMERGENCY SERVICES of the Oakland
17  Fire Department; DEPARTMENT OF
    HUMAN SERVICES of the City of Oakland;
18  OFFICE OF PARKS AND RECREATION of
    the City of Oakland; RENEE DOMINGO,
19  in her official capacity of Director of the
    Office of Emergency Services; ANDREA
20  YOUNGDAHL, in her official capacity as
    Director of the Department of Human
21  Services; AUDREE JONES-TAYLOR, in her
    official capacity as Director of the Office of
22  Parks and Recreation; and DEBORAH
    EDGARLY, in here official capacity as City
23  Administrator of the City of Oakland;

24              Defendants.

25

26

Defendants CITY OF OAKLAND; OFFICE OF EMERGENCY SERVICES of the Oakland Fire Department; DEPARTMENT OF HUMAN SERVICES of the City of Oakland; OFFICE OF PARKS AND RECREATION of the City of Oakland; RENEE DOMINGO, in her official capacity of Director of Emergency Services; ANDREA YOUNGDAHL, in her official capacity as Director of the Department of Human Services; AUDREE JONES-TAYLOR, in her capacity as Director of the Office of Parks and Recreation; and DEBORAH EDGERLY, erroneously named herein as "DEBORAH EDGARLY" in here official capacity as City Administrator of the City of Oakland answer the unverified complaint herein as follows:

I.

Under the provisions of Section 431.30(d) of the California Code of Civil Procedure, defendants generally deny each and every allegation contained in said complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE,** Defendants state that the Complaint fails to state a cause of action against these answering Defendants.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE,** Defendants allege that the injuries and damages Plaintiffs complain of, if any, resulted from the acts and/or omissions of others, and without any fault on the part of these answering Defendants.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE,** Defendants allege that all actions by them, or their employees, agents or representatives were undertaken in good faith and with the reasonable belief that said actions were valid, necessary and constitutionally proper.

1    **AS AND FOR A FOURTH AFFIRMATIVE DEFENSE,** Defendants alleges

2  that the complaint and each cause of action contained therein is barred to the extent

3  plaintiffs have failed to exhaust her appropriate administrative remedies or comply with the

4  appropriate administrative requirements.

5    **AS AND FOR A FIFTH AFFIRMATIVE DEFENSE,** Defendants allege that

6  defendants' acts were privileged under applicable statutes and case law.

7    **AS AND FOR A SIXTH AFFIRMATIVE DEFENSE,** Defendants assert that

8  Plaintiffs' state claims are barred due to plaintiffs' failure to comply with the Government

9  Tort Claims Act, Government Code section 905, et seq.

10    **AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE,** Defendants assert

11  that each of the facilities where plaintiffs allege their rights were violated was an "already

12  existing facility" within the meaning of the ADA and exempt from any access improvement

13  requirements under the applicable guidelines.

14    **AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE,** defendants allege

15  that plaintiffs lack standing to bring these causes of action.

16    **AS AND FOR AN NINTH AFFIRMATIVE DEFENSE,** Defendants allege that

17  the accommodations requested by Plaintiffs are not readily achievable, feasible, or

18  required by applicable codes and/or would result in an undue burden on Defendants and

19  others.

20    **AS AND FOR A TENTH AFFIRMATIVE DEFENSE,** Defendants allege that

21  Plaintiffs are not entitled to recover any attorneys' fees under the ADA or state law on the

22  ground that Defendants were already taking measures to remedy the sought after relief

23  prior to the lawsuit.

24    **AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE,** Defendants allege

25  that Plaintiffs claims are barred, in whole or part, by the doctrine of laches.

26    **AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE,** Defendants allege

1   that Plaintiffs claims are barred, in whole or in part, by the doctrine of waiver.

2   **AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE,** Defendants

3   allege that Plaintiffs claims are barred, in whole or in part, by the doctrine of estoppel.

4   **AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE,** Defendants

5   allege that Plaintiffs claims are barred, in whole or in part, by the doctrine of unclean

6   hands.

7   **AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE,** Defendants alleges

8   that some or all of Plaintiffs' claims are moot, and this court lacks jurisdiction.

9

10   **WHEREFORE,** Defendants pray that:

11          1.   Plaintiff take nothing by reason of her complaint;

12          2.   Defendants have judgment against plaintiff;

13          3.   Defendants be awarded its costs of suit incurred herein,

14                including costs specified in Code of Civil Procedure § 1038; and

15          4.   The Court award such other relief as it may deem proper.

16

17

18   Dated:   August 31, 2007

19                 JOHN A. RUSSO, City Attorney
                   RANDOLPH W. HALL, Assistant City Attorney

20                 WILLIAM E. SIMMONS, Supervising Trial Attorney
                   STEPHEN Q. ROWELL, Deputy City Attorney

21

22

23   By: _____

24                 Attorneys for Defendants
                   CITY OF OAKLAND

25

26

1

**PROOF OF SERVICE**

California Foundation for Independent Living Centers, et al. v. City of Oakland, et al.

2

Alameda County Superior Court Case No. RG07-339865

3

   I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is City Hall, One Frank H. Ogawa Plaza,

4

6th Floor, Oakland, California 94612.  On the date set forth below I served the within documents:

5

6

**DEFENDANTS' ANSWER TO THE COMPLAINT**

7

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

8

9

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California addressed as set forth.

10

☐    by causing personal delivery by (name) of the document(s) listed above to the person(s) at the address(es) set forth below.

11

12

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

13

☐    by causing such envelope to be sent by Federal Express/ Express Mail.

14

Disability Right Advocates

15

Sid Wolinsky
Jennifer Weiser Bezoza
Mary-Lee Kimber

16

2001 Center Street, Fourth Floor
Berkeley, CA  94704-1204

17

18

   I am readily familiar with the City of Oakland's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S.

19

Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

20

   I declare under penalty of perjury under the laws of the State of California that the

21

above is true and correct.

22

   Executed on August 31, 2007, at Oakland, California.

23

24

_____
Cynthia S. Andrada

25

26

# Transmission Log

No Station Name                 Friday, 2007-08-31  15:23                    (510) 238-6500

| Job # | Date | Time | Length | Speed | Station Name/Number | Type | Pgs | Status |
|-------|------|------|--------|-------|---------------------|------|-----|--------|
| 02248 | 2007-08-31 | 15:21 | 1:43 | 14400 | Fax Server | SCAN | 6 | OK -- V.17 AM11 |

---

MC-005

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
JOHN A. RUSSO, City Attorney, SBN 129729
RANDOLPH W. HALL, Chief Assistant City Atty., SBN 080142
STEVE Q. ROWELL, Deputy City Attorney, SBN 098228
1 Frank H. Ogawa Plaza, 6th Fl., Oakland, CA 94612
TELEPHONE NO.: (510) 238-3865    FAX NO. (Optional): (510) 238-6500
E-MAIL ADDRESS (Optional): sqrowell@oaklandcityattorney.org
ATTORNEY FOR (Name): Defendant, City of Oaklands

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: LIMITED JURISDICTION

PLAINTIFF/PETITIONER: CALIFORNIA FOUNDATION..., et al.
DEFENDANT/RESPONDENT: CITY OF OAKLAND, et al.

**FACSIMILE TRANSMISSION COVER SHEET**

CASE NUMBER: RG07339865

**TO THE COURT:**
1. Please file the following transmitted documents in the order listed below:

Document name — No. of pages

Defendants' Answer to the Complaint — 5

Please call Cynthia Andrada at 238-3446 for questions or problems. Thank You.

2. ☐ Processing instructions consisting of: _____ pages are also transmitted.

3. ☐ Fee required    ☐ Filing fee    ☐ Fax fee (Cal. Rules of Court, rule 10.815).
   a. ☐ Credit card payment I authorize the above fees and any amount imposed by the card issuer or draft purchaser to be charged to the following account:
      ☐ VISA    ☐ MASTERCARD    Account No.:    Expiration date:

   _____    ►    _____
   (TYPE OR PRINT NAME OF CARDHOLDER)    (SIGNATURE OF CARDHOLDER)

   b. ☐ Attorney account (Cal. Rules of Court, rule 2.304). Please charge my account no.:

Form Adopted for Mandatory Use
Judicial Council of California
MC-005 [Rev. January 1, 2007]

**FACSIMILE TRANSMISSION COVER SHEET**
(Fax Filing)

Page 1 of 1
Cal. Rules of Court, rule 2.304
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com